## CHARLESTON.

---

THOMAS F. WELSH *v.* COUNTY COURT OF TAYLOR COUNTY.

Submitted September 19, 1922.    Decided September 26, 1922.

COUNTIES—*County Court Under Order Submitting Bond Issue to People Held Authorized to Apply Road Funds from Sale of Bonds so as to Participate in State and Federal Aid.*

In construing an order of the county court submitting to the people the question of issuing bonds for the permanent improvement of the public roads of the county, the whole order must be read together, and where it appears that it contemplated the use of the funds to be derived from the sale of the bonds, together with such funds as might be

available from state or federal aid, so as to secure the greatest mileage of roads of increased width, and it appears that the only way that this purpose can be accomplished is to permit the State Road Commission to build. certain roads in the county from the state road fund, and to apply the funds derived from the sale of such bonds to the improvement of those roads. not adopted as state roads, an attempt upon the part of the county court to so apply said fund will not be enjoined as a misapplication thereof, and said court required to expend said funds upon roads designated as state roads, thereby defeating one of the purposes of the order, by depriving the county of any opportunity to participate in the distribution of the state and federal road funds.

Appeal from Circuit Court, Taylor County.

Suit by Thomas F. Welsh against the County Court of Taylor county. From an order refusing to dissolve an injunction, the defendant appeals.

*Reversed and remanded.*

· *W. Merle Watkins* and *Hugh Warder,* for appellant.
*G. W. Ford,* for appellee.

RITZ, JUDGE:

This appeal challenges the propriety of the ruling of the circuit court of Taylor county in refusing to dissolve an injunction on motion made for that purpose.

A petition was presented to the county court of Taylor county, signed by the requisite number of citizens of said county, asking said county court to submit to the voters a proposal to issue one million dollars of bonds for the purpose of permanently improving certain highways of said county mentioned in said petition. Upon the presentation of this petition the county court procured the services of W. S. Downs, an engineer, to make a reconnoissance survey and estimate, in order that the question · might be intelligently submitted, and also in order that the law might be complied with. The engineer reported that he had made such a survey as that required, and also made a detailed report in regard to each of the roads mentioned. He found,

according to his report, that there were three classes of roads asked to be improved by the petition, to-wit, class A roads, class B roads, and streets of the city of Grafton. He reported that the projects contemplated by the petition called for the improvement of 3.5 miles of streets within the city of Grafton, 13.5 miles of class A road, and 21.5 miles of class B road, or a total of 38.5 miles of road to be improved. He further reported that a bond issue of one million dollars would provide approximately $26,000 a mile for the 38.5 miles, but that this sum was not sufficient to improve the whole of the 38.5 miles a width of 16 feet. He estimated that to grade and pave the roads 16 feet wide it would cost $35,000 a mile, but that said roads could be graded and paved nine feet wide for $22,000 a mile. He further reported that he believed that the one million dollars to be provided by the bond issue would build approximately 11.75 miles of sixteen-foot road, and approximately 26.75 miles of nine-foot road with stone shoulders. He also reported that federal and state aid would supplement the money to be applied to the improvement of roads, and would increase the number of miles to be built to a width of sixteen feet; and, further, that any change downward in prices, which he contemplated might come, would also enable the county court to improve for a width of sixteen feet a larger mileage than that mentioned in his report. Upon the filing of this report the county court entered an order submitting the question to the people. The engineer's report was referred to in this order, and the question submitted was, whether the one million dollars of bonds should be issued and sold for the purpose of improving the roads substantially in accordance with the report of said engineer. The election was held, and the issuance of the bonds authorized, and they were accordingly issued and sold. Soon thereafter the defendants let the contract for some of the roads, described in the petition and engineer's report, to be improved 16 feet wide. These were roads that had been theretofore designated as class A roads, and the work upon them was done in accordance with the contracts. A short time before

the institution of this suit the county court and the advisory committee, which was created by the order submitting the question of the issuance of the bonds to the vote of the people, upon reviewing the situation, determined that to get the best results for the county of Taylor all of the roads should be improved sixteen feet in width, and that by taking advantage of the state and federal aid all of the roads referred to in the petition and the engineer's report could be improved of this width. There remained to be improved some of the roads referred to in the engineer's report as class A roads, but these had been adopted by the State Road Commission as state roads, and as to part thereof bids asked for their improvement by the State Road Commission. The defendants came to the conclusion that by allowing the State Road Commission to make the improvements on the roads adopted by the Commission as state roads the county would get the benefit of the state and federal aid, and they would be permitted to improve the other roads referred to in the engineer's report the full width of sixteen feet, and they accordingly let contracts for the improvement of such other roads, which contracts practically exhausted the amount remaining unexpended of the one million dollar bond issue. The plaintiffs then brought this suit to enjoin the defendants from executing those contracts for the improvement of the roads referred to in the engineer's report as class B roads until the roads referred to therein as class A roads had been improved out of the funds provided by the bond issue the full width of sixteen feet. The court granted the injunction, and on motion to dissolve held that the defendants were required by virtue of the order to improve all of the class A roads mentioned in the engineer's report the full width of sixteen feet out of the funds arising from the sale of the million dollars of bonds before appropriating any of said fund for the purpose of improving class B roads, or at least before any of said roads could be improved a greater width than 9 feet, and it is from this order that this appeal is prosecuted.

The defendants contend that there is nothing in the order

indicating what roads shall be improved 16 feet wide and what roads shall be improved 9 feet wide, but that the order clearly contemplates that if the funds arising from the sale of bonds, together with state and federal aid, are sufficient, all of said roads shall be improved 16 feet wide. The court below took the position that the engineer's report estimated the improvement of the class A roads and city streets to a width of 16 feet, and the class B roads to a width of 9 feet, but this contention cannot be supported by the figures, for the reason that the engineer's estimate shows that the length of class A roads and city streets amounts to 17 miles, while his estimate of roads to be improved the width of 16 feet is only 11.75 miles, and the class B roads amount to 21.5 miles, while the length of roads which he estimates could be improved by the bond issue fund to a width of 9 feet amounts to 26.75 miles, so it is apparent that there is no relation between the width it was expected to improve the roads and the class to which they belong. It is quite clear, however, that the defendants intended to take advantage of any situation which would allow them to improve all of the roads mentioned in the petition to a width of 16 feet. This is plainly indicated by the engineer's report, for it is therein stated that state funds and federal aid available will no doubt permit the improvement of a much greater mileage than that mentioned in the report to a width of 16 feet; and, further, that any drop in the price of material and labor will also allow an improvement of additional mileage for the additional width. The thing that was thus contemplated is the very thing that did occur. The funds provided by the state for the construction of state roads, it is found is sufficient to permanently improve the state roads in Taylor county remaining unimproved to the full width of 16 feet, and thereby relieve the county of that obligation, and by taking advantage of this situation the county is enabled to improve all of its roads to the width of 16 feet instead of some of that width, and some only 9 feet. If the defendants are required to expend the county road fund

in the improvement of the state roads, in accordance with the requirements of the circuit court, then Taylor county will get absolutely no benefit from the state road fund, and the purpose declared in the order to take advantage of federal and state aid will be clearly defeated by their own act. It is quite true that those charged with the duty of expending the proceeds of a bond issue may not divert it to purposes other than that to which it was appropriated by the people, and the question here is, what was the purposes to which this million dollars was appropriated? When we read the whole order together, we must conclude that the purpose was to apply it toward the permanent improvement of the roads of Taylor county in such manner as that, taken together with state and federal aid, the largest possible mileage can be obtained of improved road 16 feet in width, and the only way that this purpose can be accomplished is that sought to be pursued by the defendants. We, therefore, are of opinion that the defendants were not misappropriating the fund as held by the circuit court, and that the injunction should have been dissolved.

We, therefore, reverse the decree, dissolve the injunction, and remand the cause.

*Reversed and remanded.*